UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RALPH ELLIS WEEMS** | **CASE NO. 3:19-CV-0316** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ANDREW SAUL, COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Ralph Weems filed the instant application for Title II Disability Insurance Benefits on August 3, 2015. (Tr. 20, 127-131). He alleged disability as of August 31, 1987, because of back problems. (Tr. 142, 146). The state agency denied the claim at the initial stage of the administrative process. (Tr. 61-67, 71-74). Thereafter, Weems requested and received a June 21, 2017, hearing before an Administrative Law Judge ("ALJ"). (Tr. 33-60). However, in an April 26, 2018, written decision, the ALJ determined that Weems was not disabled under the Social Security Act through March 31, 1997 (the date that he was last insured for disability insurance benefits), finding at step five of the sequential evaluation process that, he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 17-27). Weems appealed the adverse decision to the Appeals Council which granted his request for review on November 26, 2018, but notified him that it intended to tweak the ALJ's findings and

still find him not disabled. (Tr. 122-126). The Appeals Council accorded Weems 30 days to submit any comments or new and material evidence. *Id.* On January 24, 2019, the Appeals Council acted upon its stated intentions and found that Weems was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 1-7). The Appeals Council's decision became the final decision of the Commissioner. (Tr. 1).

On March 12, 2019, Weems filed the instant pro se complaint for judicial review of the Commissioner's decision. He contests the sufficiency of the ALJ's findings at more than one step of the sequential evaluation process and thus, seeks reversal and remand for an award of benefits. The matter is fully briefed and ripe.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

"A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir.2018) (citation omitted). Conversely, a finding of no substantial evidence is proper when no credible

2

medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in

>   [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
>   (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
>   (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **The Commissioner's Findings**

**I.    Steps One, Two, and Three**

The Commissioner determined at step one of the sequential evaluation process that the claimant had not engaged in substantial gainful activity during the relevant period. (Tr. 6). At step two, he found that the claimant suffers severe impairments of degenerative changes in the lumbar spine, with significant narrowing of the disc spaces at L3-4 and L4-5, plus degenerative changes in the pelvis. (Tr. 6). He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id.*

4

## II. Residual Functional Capacity

The Commissioner next determined that the claimant retained the residual functional capacity ("RFC") to perform sedentary work,[1] with the need to use a cane in one hand for ambulation. (Tr. 6).

## III. Steps Four and Five

At step four, the Commissioner determined that the claimant had no past relevant work. (Tr. 6). Accordingly, he proceeded to the next step.

At step five, the Commissioner determined that, on the date last insured, the claimant was a younger individual, with a limited education, and the ability to communicate in English. (Tr. 6). Transferability of skills was not an issue because the claimant had no past relevant work. *Id*. The Commissioner then observed that, given the claimant's vocational factors and residual functional capacity, the Medical-Vocational Guidelines directed a finding of not disabled. 20 C.F.R. § 404.1569; Rule 201.24, Table 1, Appendix 2, Subpart P, Regulations No. 4; Tr. 6.

## **Analysis**

Plaintiff filed the instant application for disability benefits in August 2015, and alleged disability since 1987. Further complicating matters, however, was the fact that he was insured for Title II benefits only through March 31, 1997, and therefore, disability had to be established no later than that date. In addition, he had filed a prior application that was denied by an ALJ

---

[1] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

on January 25, 1996, and not further appealed. (Tr. 22). Consequently, the earliest date that plaintiff could be found disabled was January 26, 1996 – one day after the previous final decision was issued. *Id.* As a result, the relevant period at issue in this case is the roughly fourteen months from January 26, 1996, until March 31, 1997.

The court sympathizes with the daunting task before the Commissioner of having to look back some 20 years in an attempt to assess whether plaintiff was disabled. The Commissioner's burden was compounded by the dearth of medical records for the distinct, limited period at issue. Although the instant administrative record includes approximately 1700 pages of Veterans Administration ("VA") treatment records, most of those notes are outside of the relevant period.

The ALJ in this matter determined that plaintiff retained the RFC for sedentary work, with the need for an assistive device at all times (e.g., a wheelchair for working indoors and crutches for walking outdoors). (Tr. 23-26). In so deciding, she gave "great weight" to the opinion of the non-examining agency physician who purportedly found that the claimant's physical impairments were not severe prior to the date last insured. (Tr. 25). As it turns out, however, the agency physician, Hollis Rogers, M.D., determined that the record evidence was insufficient to determine disability prior to the date last insured. (Tr. 64-66). In the end, the ALJ reviewed diagnostic imaging tests on her own and determined that they did not preclude plaintiff from performing sedentary work, with crutches or a wheelchair.

No doubt recognizing the potential inconsistency with the agency's step three finding if the claimant had an RFC that precluded the ability to ambulate effectively (i.e., needed to use crutches or a wheelchair), *see* listing 1.00, *et seq.*, the Appeals Council rejected the ALJ's RFC, and instead adopted an RFC for sedentary work with the need to use a cane in one hand for

6

ambulation. In so deciding, the Appeals Council discounted instances in the medical record where plaintiff used a wheelchair, and instead relied on notes that reflected he ambulated with a cane.

Be that as it may, it is manifest that the ALJ and the Appeals Council evaluated the effects of plaintiff's impairments for the period at issue on their own. In so doing, the Commissioner eschewed the opportunity to obtain a medical expert opinion via written interrogatories. Under the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") the ALJ is authorized to obtain a medical expert opinion under various circumstances, including for purposes of determining the claimant's RFC and/or whether the claimant's impairment(s) meets a listed impairment(s). (HALLEX § I-2-5-34).

Here, if the agency physician, Dr. Hollis, was unable to assess the effects of plaintiff's impairments on the basis of the record before him, it is difficult to discern how the ALJ and the Appeals Council, non-medical professionals, were able to review essentially the same medical records and divine plaintiff's RFC on their own. The ALJ said that she accounted for the effects of plaintiff's impairments by limiting him to a reduced range of sedentary work.[2] However, plaintiff's testimony does not support the Commissioner's RFC. For example, he stated that he could only sit for about ten minutes before needing to stand up and move around before sitting back down. (Tr. 47-48). Also, according to plaintiff, he hardly ever walked – "[j]ust around the house . . . little ways at the time, and then [he] had to stop." *Id*. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself,

---

[2] The Appeals Council did not provide any rationale for finding that the claimant retained the exertional capacity for sedentary work. *See* Tr. 4-6. Its discussion of plaintiff's RFC was limited to whether or what type assistive device plaintiff needed to ambulate. *Id.*

7

constitute effective ambulation. (Listing 1.00B2(b)).

In sum, the court does not perceive a basis in the record to support the Commissioner's unilateral assessment of the effects of plaintiff's physical impairments. Consequently, the undersigned is constrained to find that the Commissioner's RFC is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557-558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

To be sure, another consideration in this matter is the 63 pages of additional medical records that plaintiff attached to his brief in this suit, in the first instance. A court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g)). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.*

The evidence submitted by plaintiff meets at least the first two requirements for remand, i.e., it is new and potentially material. For example, pursuant to a September 6, 1995, examination for purposes of obtaining housebound benefits, it was noted that the claimant could walk to the bathroom only and could go outdoors, but needed crutches and wheelchair. (Pl. Brief [doc. # 9-1, pg. 36]). A progress note from January 4, 1996, indicated that plaintiff was in a wheelchair, but walked with a cane. (Pl. Brief [doc. # 9-1, pg. 46]). His leg was painful, with difficulty walking. *Id.* His back condition was becoming more severe. *Id.*

The evidence, however, was by no means uniform. For instance, on November 23, 1994, plaintiff was examined in Lake Charles by orthopedist, Dale Bernauer, M.D. (Pl. Brief [doc. # 9-1, pg. 33]). Dr. Bernauer remarked that Weems was difficult to examine because of lack of cooperation. *Id.* However, Weems sat on the table with no problem, and stood against the wall. *Id.* Dr. Bernauer assigned Weems a ten percent permanent disability to his back, but opined that he had no signs of a herniated disc in his back. *Id.* Bernauer opined that Weems should not lift greater than 25 pounds, or stoop, crawl or climb on a repetitive basis. *Id.* He should be able to work within these restrictions. *Id.*

In brief, the Commissioner takes issue with the authenticity of some of the evidence adduced by plaintiff. However, when, as here, a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record does not automatically compel reversal. *Id.* Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition,

9

show that she was prejudiced as a result of [sic] scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Kane supra* (internal citations and quotation marks omitted).

It appears that many of the records submitted by plaintiff were VA treatment records. While the current administrative record includes approximately 1700 pages of VA treatment records, it is manifest that some were overlooked. Plaintiff now has produced at least some of the omitted records to show potential prejudice. To the extent that the Commissioner continues to question the authenticity and completeness of the additional evidence submitted by plaintiff, the Commissioner, upon remand, may re-double his efforts to obtain these record directly from the VA – taking care to ensure that the already voluminous record is not further burdened with duplicate copies.

In sum, the weighing and reconciliation of this new, but inconsistent, evidence should be done by the Commissioner in the first instance.[3]

## III.     Step Five and Remand

Because the foundation for the Commissioner's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled, likewise is not supported by substantial evidence.

The courts enjoy the authority to enter, upon the pleadings and transcript of the record, a

---

[3] The court notes that the administrative record does not include a copy of the ALJ's January 25, 1996, decision regarding plaintiff's prior disability application. While certainly not dispositive for the period at issue, nor necessarily relevant, the decision might shed light on plaintiff's "current" RFC if it was premised on a then-recent consultative examination, and there was no subsequent deterioration or exacerbation of plaintiff's impairments during the 14-month period following the decision.

10

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial, and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 5th day of February 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE